JOSÉ A. PEÑA, demandante, apelado y apelante, *v.* EASTERN SUGAR ASSOCIATES, (*A Trust*), y su actual Presidente MANUEL A. DEL VALLE, demandado, apelante y apelada.

Número 10699.

*Sometido:* 1 de diciembre de 1952. *Resuelto* 7 de agosto de 1953.

*Fiddler, González & Nido,* abogados de la apelante apelada; *Cruz Ortiz Stella,* abogado del apelado apelante.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

José A. Peña instó demanda contra la Eastern Sugar Associates ante el anterior tribunal de distrito en reclamación de salarios dejados de percibir durante el período comprendido entre el 19 de mayo de 1948 y el 12 de julio de 1950. Luego de un juicio en los méritos, se dictó sentencia a favor del demandante en la suma de $1,141.78. Ambas partes han apelado de dicha sentencia.

I

Es un hecho admitido que el trabajo realizado por el demandante—durante el período comprendido en la demanda él era un despachador de trenes en la oficina del ferrocarril operado por la demandada para la transportación de artículos de comercio interestatal—le daba derecho a que se le computara su salario de conformidad con la Ley Federal sobre Normas Razonables de Trabajo. Tampoco existe controversia en cuanto al número de horas trabajadas ni en cuanto a lo que se le pagó por las mismas. El 5 de

diciembre de 1946 el demandante empezó a trabajar para la compañía como despachador de trenes. Desde el 10 de enero de 1947 al 23 de enero de 1948 al demandante se le pagó un salario semanal de $34 por concepto de dicho trabajo. El 23 de enero de 1948 las partes concertaron un contrato al efecto de que el tipo básico de retribución para el demandante sería de $0.53125 por hora durante la zafra, y de $0.65384 por hora durante el tiempo muerto; que se le anticipaba que sus servicios serían necesarios por un término no menor de 56 horas a la semana durante la zafra y no menor de 48 horas durante el tiempo muerto; que el tiempo trabajado en exceso de 40 horas semanales le sería pagado a razón de vez y media el tipo de salario básico aplicable; que el tiempo trabajado en exceso de ocho horas diarias o durante el día de descanso fijado por la ley, le sería pagado a razón de dos veces dicho tipo sencillo; y que se le garantizaba un salario semanal de $34 por todo el año.

La demandada apeló de aquella parte de la sentencia del tribunal a quo al efecto de que los tipos sencillos de paga por hora provistos en el contrato anterior, conocido como del tipo *Belo*, no eran predominantes bajo las circunstancias de este caso. El Congreso dispuso en la sección 7 de la Ley Federal sobre Normas Razonables de Trabajo, 52 Stat. 1060, 29 U.S.C. 207, que si un empleado trabaja en exceso de cierto número de horas semanales, recibirá paga extra no menor de tiempo y medio "el tipo sencillo" para todas las horas en exceso de la semana de trabajo máxima estatutaria. Pero el Congreso no dijo qué constituía "el tipo sencillo" a los fines de calcular la paga extra. En *Walling* v. *Belo Corp.*, 316 U.S. 624, la Corte Suprema sostuvo contratos de empleo bajo los cuales el patrono convenía en pagar (1) un tipo sencillo fijo de 67¢ por hora, que era más del mínimo exigido entonces por la Ley; (2) no menos de vez y media dicho tipo por tiempo extra; (3) un salario semanal mínimo garantizado de $40. Bajo estas disposiciones, con la semana regular de trabajo de 44 horas que entonces prevalecía, un

empleado tenía que trabajar más de 54½ horas para poder ganar más de lo garantizádole. La corte resolvió que, bajo las circunstancias de dicho caso, el tipo de 67¢ por hora era el "tipo sencillo" a ser usado al computarse la paga extra. Se aceptó el tipo sencillo de 67¢ como que no era ficticio.

Dodd, *The Supreme Court and Fair Labor Standards, 1941–1945*, 59 Harv.L.Rev. 320, describe los contratos envueltos en la decisión del caso de *Belo* como sigue (pág. 357): "El resultado de estos convenios era que, independientemente del número de horas en verdad trabajadas, los empleados ni recibirían más ni recibirían menos de $40, con excepción de las semanas durante las cuales trabajasen 54½ horas o más. En cualquier semana en la que un empleado trabajase menos de 44 horas—que en aquel entonces era el máximo de horas que se podían trabajar sin la penalidad de pagar tiempo extra—el llamado tipo sencillo era enteramente inaplicable. En cualquiera de dichas semanas, el empleado, sin trabajar ningún tiempo extra, recibiría más de 67¢ por hora. En las semanas en que las horas excedían de 44, sería posible caracterizar como paga extra la suma pagada en exceso de 67¢ por hora, pero, a menos que las horas trabajadas excediesen de 54½, el salario semanal verdadero sería determinado, no por la disposición sobre 'tipo sencillo' contenida en el contrato, ni por la disposición sobre tiempo extra del estatuto, sino por la garantía." En pocas palabras, tal contrato, de ser válido, le permite a un patrono pagar un salario semanal uniforme, que incluye la paga extra, por semanas en que la cantidad de trabajo realizado sea diferente. El patrono no tenía que pagar más de la garantía semanal, siempre y cuando el número de horas extras, de haber algunas, sea lo suficientemente bajo para estar comprendidas en la garantía semanal, que es considerada bajo estas circunstancias, como que se ha pagado por todas las horas trabajadas al tipo básico fijado en el contrato más el 50 por ciento por horas extras.

El enfoque del caso de *Belo* al problema de determinar el "tipo sencillo" a los fines de determinar la paga extra ha sido severamente censurado por los comentaristas.([1]) Aparentemente, su raciocinio fué minado por casos tales como *Walling* v. *Helmerich & Payne*, 323 U.S. 37; *Walling* v. *Hardwood Co.*, 325 U.S. 419; *Walling* v. *Harnischfeger Corp.*, 325 U.S. 427; *Madison Ave. Corp.* v. *Asselta*, 331 U.S. 199; *Bay Ridge Co.* v. *Aaron*, 334 U.S. 446. Sin embargo, no empece las profecías casi generales en cuanto a su pronta desaparición, todavía sobrevive.

En el caso de *Walling* v. *Halliburton Co.*, 331 U.S. 17, la corte dijo a las págs. 25, 26: "Conociendo la decisión del caso de *Belo*, el Congreso ha permitido que la sección 7(*a*) permanezca inalterada y las cortes la han aplicado como la misma ha sido interpretada en dicho caso. Los patronos y los empleados (incluyendo a los envueltos en este caso) han reglamentado sus asuntos a base de dicha sección. Aun cuando dudásemos de la sabiduría de la decisión del caso de *Belo* como una proposición original, no debiéramos sentirnos inclinados a abandonarla en este momento." Posteriormente, en el caso de *Bay Ridge Co.* v. *Aaron*, supra, refiriéndose al caso de *Belo*, la corte dijo a la pág. 462 que "Hemos reafirmado dicha decisión como un precedente limitado principalmente porque el público ha descansado en la misma y el Congreso ha aceptado la doctrina en ella enunciada."([2])

---

([1]) Levy, *Belo Revisited*, XV Geo. Wash. L. Rev. 39; Feldman, *Algebra and the Supreme Court*, 40 Ill.L.Rev. 489; 13 U. of Chicago L. Rev. 486; 52 Yale L.J. 159; 89 U. of Pa. L.Rev. 982; 27 Va.L.Rev. 1096; 34 Calif.L.Rev. 227; 35 Calif.L.Rev. 589; 54 Harv.L.Rev. 1077; 44 Mich.L.Rev. 866.

([2]) En 1949 el Congreso por enmienda a la sección 7(*e*) de la Ley, incluyó en el estatuto la doctrina *Belo* con algunas pequeñas modificaciones, 63 Stat. 910. Según esta enmienda un contrato de empleo puede disponer el pago de cantidades semanales garantizadas a los empleados que trabajan horas irregulares, siempre y cuando (1) los deberes de los empleados exijan horas irregulares de trabajo; (2) el contrato especifique un tipo sencillo de paga no menor que el mínimo estatutario; (3) el contrato provea compensación no menor de vez y media el tipo sencillo de paga por todas las horas trabajadas en exceso de 40 durante cual-

En *McComb* v. *Roig*, 181 F.2d 726 (C.A. 1, 1950), la corte citó con aprobación una descripción de la doctrina *Belo* que aparece en *McComb* v. *Sterling Ice & Cold Storage Co.,* 165 P.2d 265, 269–70 (C.A. 10, 1947) y que dice así:

"De un análisis de estos casos, concluimos que la regla correcta a ser aplicada es que cuando los empleados trabajan horas irregulares bajo un contrato que fija un tipo sencillo por hora y provee tiempo y medio por trabajo extra así como también una garantía semanal, el tipo por hora tiene que haber tenido el propósito de determinar el salario semanal que se contempló se pagaría tanto por tiempo sencillo como por tiempo extra, a no menos de vez y media la cantidad del tipo sencillo; y que la garantía semanal debe ser una suma que las partes hayan contemplado resultaría corrientemente de la aplicación del tipo por hora a las horas ordinarias y extras trabajadas, tomando en consideración que las horas de trabajo no fueron fijadas y que éstas varían bastante *de semana a semana.* Si el tipo por hora fijado en el contrato era tal que no determinaba razonablemente los salarios semanales que se intenta pagar a los empleados, a tenor con la naturaleza de su empleo, tanto para las horas sencillas como a tiempo y medio el tipo por hora para las horas extras por las horas que ellos trabajasen corrientemente, dicho tipo por hora sería un tipo de paga ficticio. En tal caso, la garantía semanal constituiría el salario verdadero y sería usado en computar y determinar el tipo por hora." (Bastardillas nuestras.)

No nos detendremos a determinar si el contrato ante nos, al aplicarse al récord de trabajo del querellante, cumple con todos los requisitos para la aplicación de la doctrina de *Belo.* Según dijo el tribunal sentenciador, el caso de la querellada tiene una grieta fatal. Las autoridades hacen constar claramente que se permite que el tipo sencillo de paga por hora

quier semana de trabajo; (4) el contrato establezca una garantía de paga semanal; (5) la garantía semanal, a los tipos así especificados, cubra no más de 60 horas.

Las enmiendas de 1949 entraron en vigor durante el período comprendido en esta demanda. Sin embargo, no consideramos los problemas que dicho hecho podría suscitar, ya que el resultado a que llegamos en este caso sería el mismo bien sea bajo la decisión del caso de *Belo.* o bien bajo las enmiendas de 1949. *Cf.* Brewer, *A "Belo" Primer for 1950,* 1 Labor Law Journal 94, 100.

provisto en un contrato de tipo *Belo*, gobierne la paga extra de un empleado, siempre y cuando (*a*) la naturaleza del trabajo del empleado exija horas de trabajo irregulares, y (*b*) el número de horas que el empleado trabaje de hecho fluctúe de semana en semana. *Walling* v. *Belo Corp.*, supra, pág. 632; *Walling* v. *Halliburton Co.*, supra, págs. 19, 21; *Beechwood Lumber Co.* v. *Tobin*, 199 F.2d 878 (C.A. 5, 1952); *McComb* v. *Roig*, supra; *McComb* v. *Sterling Ice & Cold Storage Co.*, supra; *McComb* v. *Utica Knitting Co.*, 164 F.2d 670, 673 (C.A. 2, 1947); *Interpretative Bulletin, Wage and Hour Division, January, 1950, Part 778.18,* págs. 29–31.

■■ En el presente caso el tribunal sentenciador llegó a la siguiente conclusión de hecho: "De la prueba resulta evidente que las horas de trabajo del querellante no fluctuaban de semana a semana; esto es, no existía una condición de irregularidad o inestabilidad en sus horas de trabajo; su trabajo no era de naturaleza tal que requiriera horas de trabajo irregulares, variables, de semana a semana. Por el contrario, sus horas de trabajo eran determinadas. Como cuestión de realidad, antes de hacerse el contrato, el querellante tenía un turno diurno fijo y, como tal, trabajaba horas regulares." Los hechos incontrovertidos que surgen de los autos ampliamente sostienen la conclusión del tribunal sentenciador al efecto de que durante el período comprendido en la demanda, no hubo necesidad de que el demandante trabajase horas irregulares y que sus horas de trabajo no variaron de hecho de semana en semana. Por el contrario, con pequeñas excepciones, el demandante trabajó una semana bastante estable durante el tiempo muerto y una semana, más larga, pero aun bastante estable, durante la zafra.(³)

(³) Las partes estipularon que la zafra duró desde el primero de febrero al 30 de junio. Durante las 51 semanas de zafra cubiertas por la querella, el demandante trabajó más de 56 horas semanales en sólo dos ocasiones: (1) la semana que terminó el 9 de marzo de 1949, 59.25 horas; (2) la semana que terminó el 24 de mayo de 1950, 60 horas. Durante las 62 semanas del tiempo muerto cubiertas por la querella, el

Los autos "sugieren una regularidad de horas normales de trabajo fácilmente susceptibles de ser ajustadas a la política estatutaria." *McComb* v. *Utica Knitting Co.*, supra, opinión disidente, pág. 678. Bajo dichas circunstancias, no es aplicable la decisión *Belo* y el llamado tipo sencillo de paga provisto en el contrato aquí envuelto nada tiene que ver sobre la cuestión de paga extra.

Existen otras dificultades para la demandada en este caso. Un contrato de tipo *Belo* es un mecanismo sumamente intrincado y muy delicado. Tal contrato debe ser legal en todo respecto; las pagas extras provistas en el mismo deben ser pagadas de hecho y esto debe hacerse prontamente; y su validez se juzga por el récord actual de trabajo del demandante y no simplemente por los términos escuetos del contrato escrito u oral. *Madison Ave. Corp.* v. *Asselta*, supra, pág. 204; *Bay Ridge Co.* v. *Aaron*, suprá, pág. 464; *Walling* v. *Harnischfeger Corp.*, supra, pág. 430.

El contrato y la conducta observada por la demandada en este caso no cumplen con estos requisitos. En primer lugar, según indicó el tribunal sentenciador, como cuestión de derecho no era posible cumplir con el contrato, en vista de los requisitos para paga doble por trabajo realizado en exceso de ocho horas al día y por trabajo durante el día de descanso.(4)  En segundo lugar, durante todo el período

demandante trabajó más de 48 horas en sólo 9 ocasiones: 7 de ellas de 56 horas, 1 de 52 y 1 de 48.75. El demandante recibió paga extra únicamente en cuatro ocasiones—tres veces durante la zafra; una durante el tiempo muerto. Éstas se detallan en el escolio 5. Como se dice en el texto de la opinión, aun en estas pocas ocasiones, la paga no tenía relación alguna con las horas extras trabajadas.

En las 51 semanas de la zafra, el demandante trabajó menos de 40 horas a la semana—es decir, 32 horas semanales—durante sólo tres semanas. En las 62 semanas del tiempo muerto, el demandante trabajó menos de 40 horas semanales durante sólo siete semanas. En estas semanas trabajó 8, 32, 38, 21, 24, 32 y 16 horas, respectivamente.

(4)La nota 4 de las conclusiones de hecho del tribunal sentenciador lee así:

"El importe de las 16 horas en exceso de las 40 durante el período de zafra así como el de las 8 horas en exceso de las 40 durante el período muerto, computados a base de tiempo y medio, unidas al importe de las 40 horas legales, en uno y otro período hacen un total de $34.

cubierto por la demanda, la demandada, infringiendo su propio convenio, le pagó al demandante solamente $34 a la semana, independientemente del número de horas que éste trabajó, con excepción de cuatro semanas. Y aun en cuanto a éstas, las sumas extras pagadas al demandante, oscilando entre 79¢ y $11.95, nada tenían que ver con los tipos a los cuales trabajo extra en teoría estaba supuesto a ser calculado bajo el contrato.([5]) En vista de estas consideraciones,

---

(ZAFRA: ($0.53125 × 40) + ($0.53125 × 150% × 16) es igual a $34; TIEMPO MUERTO: ($0.65384 × 40) + ($0.65384 × 150% × 8) es igual a $34.) Sin embargo, como el contrato disponía que las horas en exceso de ocho horas diarias o durante el día de descanso serían pagadas a razón de dos veces el tipo básico de salario aplicable, resulta evidente que, a base de ese contrato, la garantía semanal de $34 sólo podía cubrir 54 horas de trabajo en tiempo de zafra a pesar de que el mismo contrato exigiera no menos de 56 horas semanales de trabajo. Estas 56 horas exigidas importaban, de acuerdo con el tipo por hora fijado en el contrato, un salario semanal de $36.12.

($0.53125 × 40) + ($0.53125 × 150% × 8) + ($0.53125 × 2 × 8) es igual a $36.12."

Sobre este mismo punto, el párrafo 13 de las conclusiones de hecho dice lo siguiente:

"13. A pesar de que el contrato disponía que todo tiempo en exceso de 40 horas semanales le sería compensado al querellante a razón de vez y media el tipo básico de salario aplicable, y todo tiempo trabajado en exceso de ocho horas diarias o durante el día de descanso que marca la ley a razón de dos veces dicho tipo básico, al querellante no se le pagó lo que le hubiera correspondido de acuerdo con dicho contrato ya que en las semanas de zafra en que trabajó 56 horas sólo se le pagó $34, cuando lo correcto hubiera sido, de haberse seguido o haber controlado el tipo básico de retribución por hora fijado en el contrato, que se le hubiera pagado a tiempo y medio las primeras ocho horas en exceso de las 40 y a tiempo doble las otras horas en exceso de las 48. Esto tenía que ser así ya que cualquier hora en exceso de las 48 tenía necesariamente que ser, o bien una hora trabajada en exceso de las 8 horas diarias, o una hora trabajada durante el día de descanso. Igualmente sucedió en cuanto a las horas en exceso de las 56, en tiempo de zafra, con las excepciones anotadas anteriormente, y con las horas en exceso de las 48 en tiempo muerto."

([5]) Durante la semana que terminó el 9 de marzo de 1949, el demandante trabajó 59.25 horas y se le pagaron $11.95 extras; durante la semana que terminó el 18 de mayo de 1949 trabajó 52 horas y se le pagaron $4.25 extras; durante la semana que terminó el 3 de agosto de 1949 trabajó 48.75 horas y se le pagaron 79¢ extras; durante la semana que terminó el 24 de mayo de 1950 trabajó 60 horas y se le pagaron $4.85 extras. La semana que finalizó el 3 de agosto de 1949 pertenecía al tiempo muerto. Las otras tres a la zafra.

la demandada no saldría victoriosa en este caso, aun cuando hubiera podido probar que el trabajo del demandante exigía horas irregulares y que su empleo de hecho fluctuó de semana en semana. (⁶)

---

(⁶) La querellada admite en su alegato así como ante el tribunal sentenciador que, con excepción de las cuatro semanas que aparecen en el escolio 5, no le pagó al demandante el tiempo extra exigido por su contrato, aun cuando sostuviéramos su contención de que el supuesto tipo sencillo de paga por hora en el contrato era válido. Admite que durante las siete semanas del tiempo muerto el demandante trabajó más de 48 horas a la semana y se le pagaron solamente $34 por semana. Asiente en que adeuda paga doble por ellas, usando la cifra de $0.65384 por hora como el tipo sencillo, ascendente a $68.12.

También admite la querellada que cometió error con referencia a la paga extra en la zafra cuando el demandante trabajaba más de 48 horas semanales, ya que bajo el contrato todo trabajo realizado en exceso de 40 horas semanales sería pagado a tiempo y medio, y todo el trabajo realizado en exceso de ocho horas al día o durante el día de descanso tenía que pagarse a doble tiempo. Dice que "Por error, pues no hay otra explicación, se pagaron las horas en exceso de 48 y durante el día de descanso también a tiempo y medio en vez de a doble tiempo como exige el contrato y la ley." Por consiguiente admite que por trabajo realizado durante 22 semanas en días de descanso, adeuda $40.25 por medio tiempo, para elevar la paga a tiempo doble.

Asimismo "aclara" que durante la semana que finalizó el 3 de agosto de 1949, pagó por ¾ de hora trabajados en exceso de ocho diarias a razón del tipo básico de $0.53125 por hora, cuando debió ser a razón del tipo básico de $0.65384 por hora y de $1.31 por hora a doble tiempo. En consecuencia adeuda la diferencia entre 79¢ y 98¢, o sean 19¢ adicionales.

Sumando las cifras de $68.12, $40.25 y 19¢, admite que adeuda al demandante $108.56, que está dispuesta a pagar, más las penalidades correspondientes, o sean $217.12.

Pero éstos no son todos meros "errores matemáticos" como parece creer la demandada. Más bien, son una gráfica demostración de que como cuestión de hecho el convenio era por una garantía semanal de $34, independientemente de las horas trabajadas. Los patronos que deseen usar un contrato tipo *Belo* no pueden, como en este caso, cándidamente hacer caso omiso del récord de trabajo de un empleado, proceder a pagarle solamente la garantía semanal aun cuando, bajo el tipo sencillo de paga por hora especificado, el empleado tenga derecho a recibir paga extra que exceda la garantía semanal, y entonces cuando se radica un pleito, subsanarlo todo ofreciendo entonces hacer los pagos de tiempo extra que debió originalmente hacer cuando éstos se devengaron. Tal conducta, resuelven los casos citados en la opinión, constituyen sólida evidencia de que el verdadero tipo de paga estaba comprendido en la garantía semanal y que el alegado tipo sencillo de paga por hora es un mecanismo ficticio y artificial.

■ El artículo 11 de la Ley núm. 379, Leyes de Puerto Rico, 1948 (pág. 1255), juega un pequeño papel en relación con el problema de si el contrato aquí envuelto es un contrato válido del tipo *Belo*. Dicho artículo provee en parte que "Será nula toda cláusula o estipulación de un contrato de trabajo en que la compensación del empleado se fije en un tipo de salario por día, por semana, o por mes, que incluya conjuntamente el pago de las horas regulares y las horas extras de trabajo." Independientemente del artículo 11, las disposiciones contenidas en el contrato en este caso para tipos sencillos de paga por hora deben subsistir o caer, dependiendo de si los mismos cumplen con los requisitos de la decisión en el caso de *Belo* considerada más arriba en esta opinión. Si hubiésemos convenido con la demandada en cuanto a que el contrato cumplía con dichos requisitos, los tipos de paga por hora en el contrato—$0.53125 durante la zafra y $0.65384 durante el tiempo muerto—hubieran sido válidos y eficaces y habrían sido el factor dominante del contrato. Pero bajo dichas circunstancias el contrato no hubiera estado prohibido por el artículo 11 ya que éste prohibe un tipo de compensación que "incluya conjuntamente" paga sencilla y paga extra solamente cuando la compensación se fije a tipos diarios, semanales o mensuales. Como indicó el tribunal sentenciador, hubiera sido absurdo y sin fin práctico alguno incluir contratos que fijen tipos de paga por hora dentro de la prohibición del artículo 11.

Por otro lado, ya hemos resuelto (1) que los tipos de $0.53125 y $0.65384 por hora, fijados para la zafra y el tiempo muerto, respectivamente, eran ficticios y arbitrarios y no el tipo sencillo exigido por la sección 7 de la Ley Federal; y (2) que, como consecuencia, la garantía de $34 a la semana constituye el salario verdadero y se usa al computar y determinar el tipo de paga por hora. Así vemos que en el caso de autos el mismo resultado ordenado por el artículo 11 surge bajo la Ley Federal, sin necesidad de recurrir a dicho artículo.

■ La demandada arguye enfáticamente a favor de este arreglo mediante el cual a un número limitado de empleados se les puede dar por todo el año una garantía semanal de salario, en las industrias por temporadas como lo es la industria azucarera. No cuestionamos la deseabilidad económica de tal convenio para la estabilidad del ingreso de los empleados. Pero, a los fines de este caso, estamos constreñidos a resolver que bajo las decisiones federales éste es un argumento que se destruye a sí mismo. La doctrina *Belo* no fué creada para resolver los problemas de industrias por temporadas. Por el contrario, vino a la luz para resolver el problema de las semanas de trabajo de diferente duración, fluctuando de semana en semana. En un caso adecuado la decisión *Belo* puede desde luego ser aplicada a una industria por temporada así como a cualquier otra industria. *Cf. Walling* v. *Anderson, Clayton and Company*, 12 Labor Cases, pár. 63, 790 (Tenn., Dist. Ct., 1947) para un caso en que *se sostuvo* un contrato tipo *Belo* en una industria por temporada. Pero aquéllos que se dedican a industrias por temporada deben recurrir a otras disposiciones de la Ley Federal y a otros arreglos que no sean contratos de tipo *Belo* para resolver los problemas de industrias por temporada que tienen semanas de trabajo bastante estables que varían marcadamente sólo con respecto a la época de actividad y el tiempo muerto y no dentro de los respectivos períodos de la temporada y del tiempo muerto. (⁷)

■ La contención restante de la demandada es que aun cuando el demandante resulte ganancioso en los méritos, debemos relevarla de los daños líquidos provistos en el ar-

---

(⁷)"Un patrono puede establecer legalmente por *convenio anterior* con sus empleados, un tipo de paga específico más bajo para la temporada de actividad cuando se trabajan más horas que para la temporada muerta, aunque el propósito y efecto de los dos tipos sea el de mantener un salario constante. Mientras dichos tipos sean especificados por adelantado, operen durante períodos sustanciales de tiempo, y sean bona fide como los tipos que de hecho sean pagados al empleado durante todo el tiempo en cada uno de los dos períodos, la División de Horas y Salarios cree que dichos tipos deben considerarse como 'tipos sencillos' a fin de computar la paga extra. *Wage-Hour Div., Sp. Op.*, 1144-42." Prentice-

tículo 13 de la Ley núm. 379. El patrono no alega que puede ser relevado en todo o en parte de estos daños bajo la Ley Federal. Limita su argumento en un corto párrafo a la contención de que no debemos aplicarle a él los daños líquidos prescritos en el artículo 13. Una buena contestación a este argumento es que la disposición con respecto a daños líquidos es mandatoria. Véase *Tulier* v. *Autoridad de Tierras.* 70 D.P.R. 267.

## II

■ Pasemos ahora a la única cuestión suscitada por la apelación del demandante. Una vez que rechacemos la contención de que las partes otorgaron un contrato válido del tipo *Belo,* es necesario que determinemos si la garantía semanal es dividida por el número de horas de hecho trabajadas, o por algún otro número de horas, con el fin de determinar el tipo sencillo por hora sobre el cual se basa la paga extra.

Al pasar sobre este problema, la Corte Suprema de los Estados Unidos y las cortes estatales han resuelto que bajo la Ley Federal el "tipo sencillo" por hora se determina dividiendo el salario por cada semana por el número total de horas de hecho trabajadas durante esa semana específica. Esto, desde luego, resulta en un "tipo sencillo" de paga por hora diferente para cada semana, dependiendo del número de horas trabajadas durante cada semana. *Bay Ridge Co.* v. *Aaron,* supra, págs. 460–61, y casos allí citados; *Mabee* v. *White Plains Pub. Co.,* 41 N.Y.S.2d 534, 540–41 (1943); *Tidewater Optical Co.* v. *Wittkamp,* 19 S.E.2d 897 (Va., 1942); *Graves* v. *Armstrong Creamery Co.,* 118 P.2d 613 (Kansas, 1941); Anotación, 169 A.L.R. 1307, 1311; Anotación, 89 L.ed. 35, 57–59.

---

Hall, *Wage and Hour, Labor Equipment,* Vol. I, pár. 10,353.3, pág. 10,392; 3 C.C.H. Labor Law Reporter, pár. 25,520.619. Y véanse *Vives* v. *Serrallés,* 145 F.2d 552 (C.A. 1, 1944); *McComb* v. *Roig,* 181 F.2d 726, 728 (C.A. 1, 1950); Interpretative Bulletin, Wage and Hour Division, enero, 1950, Parte 778.9(*h*), págs. 21–22. *Cf. McComb* v. *Del Valle,* 80 F.Supp. 945 (Dist. Ct., P.R., 1948); *Waialua Agr. Co.* v. *Maneja,* 97 F.Supp. 198 (Dist. Ct., Hawaii, 1951).

Sin embargo, la corte sentenciadora no siguió la regla antes mencionada para las semanas en que el demandante trabajó más de 48 horas. Por el contrario, empleó la siguiente fórmula: "En las semanas en que trabajó menos de 40 horas no existe problema alguno, ya que los $34 cubren las 40 horas; en las semanas en que trabajó más de 40 horas y menos de 48 horas debe dividirse por el número de horas trabajadas. Ahora, en las semanas en que el obrero trabajó 48 horas o más, debe dividirse por 48 horas ya que 'son horas regulares de trabajo . . . cuarenta y ocho horas durante cualquier semana'. (Art. 3 de la Ley 379.)" [8]

Admite la demandada que el tribunal sentenciador actuó correctamente al negarse a seguir la regla Federal que, como hemos visto, es al efecto de que en ausencia de un contrato válido del tipo *Belo*, el tipo sencillo por hora se determina dividiendo el salario por cada semana por el número total de horas de hecho trabajadas durante esa semana específica. La demandada conviene en que una fórmula más beneficiosa al empleado es establecida por la Ley núm. 379. [9] La única controversia es si bajo las circunstancias de este caso la Ley núm. 379 y el Decreto Mandatorio núm. 3 requieren que el divisor sea 48 horas (según se resolvió por el tribunal sentenciador y sostenido por la demandada) ó 40 horas (según sostiene el querellante).

---

[8] Según indica lo arriba citado, el tribunal sentenciador resolvió que, para las semanas en que el demandante trabajó más de 40 horas y menos de 48, el divisor es el número de horas que de hecho trabajó y no 48 horas. La demandada no cuestiona esta decisión. Al no emplear como divisor bajo estas circunstancias la semana regular de trabajo de 48 horas supuestamente establecida por la Ley núm. 379, el tribunal sentenciador presumiblemente siguió la teoría de que el demandante tenía derecho a invocar la regla federal más bien que la Ley núm. 379 cuando la primera redundara en su beneficio. Véase *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 294 y escolio 9, infra.

[9] Cuando aprobó la Ley sobre Normas Razonables del Trabajo, "el Congreso expresamente permitió la existencia de leyes locales sobre salario mínimo y semana máxima de trabajo, si éstas disponían normas más altas que las comprendidas en la Ley Federal." *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 294.

El artículo 2 de la Ley núm. 379 prescribe así:

"Ocho horas de labor constituyen la jornada legal de trabajo en Puerto Rico.

"Cuarenta y ocho horas de labor constituyen una semana de trabajo.

"Doscientas ocho horas de labor constituyen un mes de trabajo.".

El artículo 3 de dicha Ley núm. 379 dispone que "Son horas regulares de trabajo ocho horas durante cualquier período de veinticuatro horas consecutivas, cuarenta y ocho horas durante cualquier semana . . ." El artículo 4 provee que las horas extras de trabajo son ". . . (b) Las horas que un empleado trabaja para su patrono en exceso de cuarenta y ocho horas durante cualquier semana, a menos que las horas trabajadas diariamente en exceso de ocho sean pagadas a tipo doble." El artículo 5 prescribe:

"Todo patrono que emplee o permita que trabaje un empleado durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; *Disponiéndose, sin embargo,* que todo patrono de una industria de Puerto Rico cubierta por las disposiciones de la Ley de Normas Razonables de Trabajo (*Fair Labor Standards Act*), aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora de trabajo en exceso de la jornada legal de ocho (8) horas o en exceso de cuarenta (40) horas a la semana un tipo de salario a razón de, por lo menos, tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado o fijare otra norma de trabajo o de compensación, o de ambas. *Para determinar el tipo de salario convenido para horas regulares de trabajo, se dividirá el salario diario, semanal, mensual o en otra forma estipulado, por el número de horas regulares que se trabaje durante ese mismo período de acuerdo con las disposiciones de esta ley.*" (Bastardillas nuestras.)

Como ya se ha indicado, el artículo 11 de la Ley núm. 379 en efecto inserta en un estatuto local algunas de las salvaguardas que restringen el uso de un contrato tipo *Belo*. Finalmente, el artículo 7 dispone que "Si el empleado trabaja por un salario semanal el salario estipulado cubrirá únicamente el pago de las horas regulares de trabajo durante cada semana."

El Decreto Mandatario núm. 3 prescribe en el párrafo B(2)(*b*) que "Ningún patrono empleará a trabajador alguno en la fase industrial de la industria del azúcar durante el llamado 'tiempo muerto' por más de cuarenta (40) horas en cualquier semana de trabajo, a menos que dicho trabajador reciba compensación por su trabajo en exceso de dichas cuarenta (40) horas a razón de tiempo y medio el tipo mínimo de salario aplicable de acuerdo con la escala establecida en el apartado B-1 de este Decreto."

Como hemos visto, la regla Federal es que cuando se invalida un contrato tipo *Belo*, el "tipo sencillo" por hora se determina dividiendo el salario semanal por el número total de horas de hecho trabajadas durante esa semana específica. Pero el artículo 7 y la última oración del artículo 5 de la Ley núm. 379 cambian esta regla, en beneficio del empleado, disponiendo que bajo estas circunstancias el divisor es el número de horas que constituyen la semana regular de trabajo. La demandada no difiere. Afirma, sin embargo, que 48 horas son la semana regular de trabajo provista por los artículos 2 y 3 de la Ley núm. 379. En su consecuencia arguye que el impacto de la Ley núm. 379 exige el uso de 48 horas como el divisor en un contrato ineficaz de tipo *Belo*.

Convendríamos en seguida con esta contención de la demandada de que 48 horas, como la semana regular de trabajo establecida por los artículos 2 y 3 de la Ley núm. 379, sería el divisor si el demandante hubiera sido empleado en una industria local. La dificultad estriba en que el *Disponiéndose* en el artículo 5 fija una regla diferente para las industrias sujetas a la Ley Federal. Con posibles excep-

ciones que aquí no son relevantes, ([10]). el artículo 5 adopta la norma federal de una semana de trabajo de 40 horas para las industrias sujetas a la Ley Federal. Por consiguiente, como proposición general, el artículo 5 y la Ley Federal, leídas conjuntamente, hacen de *40* horas la semana regular de trabajo para la fase industrial del negocio azucarero durante la zafra. Y el párrafo B(2)(*b*) del Decreto Mandatorio Núm. 3 y la Ley Federal logran el mismo resultado para el tiempo muerto, véase *Caguas Bus Line* v. *Sierra, Comisionado*, 73 D.P.R. 743. Esto contrasta con las otras disposiciones de la Ley núm. 379 que hacen de *48* horas la semana regular de trabajo para la industria local. De ahí surge que, a virtud del mandato del artículo 7 y de la última oración del artículo 5 de la Ley núm. 379, el divisor aquí —la semana regular de trabajo—es 40 horas y no 48.

En vista de lo anterior, convenimos con el demandante y así lo resolvemos que el tipo sencillo de paga por hora para cada semana en que se adeuda tiempo extra, debe determinarse dividiendo la garantía semanal por 40 horas. Por consiguiente, modificaremos a ese efecto la sentencia apelada, y devolveremos el caso al tribunal sentenciador para los cálculos aritméticos necesarios. Así modificada, la sentencia del anterior tribunal de distrito será confirmada. ([11])

El Juez Asociado Sr. Sifre no intervino.

---

([10]) A virtud del artículo 7(*c*) de la Ley Federal los patronos en la fase industrial de la industria azucarera no vienen obligados a pagar tiempo extra por las horas trabajadas en exceso de 40 por *ciertos* empleados durante la zafra. *Cf*. escolio 7. Pero aquí no se alega que el trabajo del demandante durante la zafra estaba cubierto por la exención de paga extra contenida en la sección 7(*c*) de la Ley Federal. Aparentemente el demandante es un empleado a quien debe pagarse tiempo extra en exceso de 40 horas durante la zafra a tenor con la Ley Federal. Por tanto, dejamos para otro día la cuestión de qué efecto, de tener alguno, tuvo el *Disponiéndose* del artículo 5 de la Ley núm. 379 sobre la exención comprendida en la sección 7(*c*) de la Ley Federal. En un caso adecuado las compañías azucareras presumiblemente argüirían en efecto que debemos leer el *Disponiéndose* del artículo 5 como si incluyera la frase "cuando la Ley Federal requiera paga por horas extras".

([11]) Creemos propio decir que la elaborada y hábil opinión y las conclusiones de hecho y de derecho del tribunal sentenciador nos han sido de gran ayuda en la resolución de este caso.

EN MOCIÓN DE RECONSIDERACIÓN

10 de diciembre de 1953.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Este caso se encuentra ahora ante nos con motivo de una moción de la demandada para que reconsideremos nuestra opinión y sentencia confirmando, según fué modificada por este Tribunal, la sentencia del anterior tribunal de distrito a favor del demandante en una acción en cobro de salarios. En nuestra resolución señalando para vista la moción de reconsideración, ordenamos a las partes que limitaran sus argumentos a la cuestión de prescripción. También invitamos al Secretario de Trabajo de los Estados Unidos y al Secretario de Trabajo del Estado Libre Asociado de Puerto Rico para que presentaran sus puntos de vista sobre la cuestión de prescripción.

Se trata de un pleito en cobro de salarios por trabajo realizado durante el período comprendido entre el 19 de mayo de 1948 y el 12 de julio de 1950. La demanda fué radicada el 7 de noviembre de 1951. La sección 6 de la Ley de Portal a Portal fija un término prescriptivo de dos años para "cualquier causa de acción por salario mínimo no pagado, por paga adeudada por tiempo extra, o por daños líquidos, bajo la Ley sobre Normas Razonables de Trabajo . . ." que se devengue después del 14 de mayo de 1947. 61 Stat. 84, 87, 29 U.S.C. (Sup. V) sec. 255; *Ricci* v. *El Mundo, Inc.*, 85 F.Supp. 82 (Dist. Ct., P.R., 1949).([1]) Por consiguiente, sostiene la demandada que aquella parte de la reclamación por salarios que se devengó desde el 19 de mayo de 1948 hasta el 7 de noviembre de 1949, estaba prescrita "para siempre" a virtud de la sección 6 (a) de la Ley de Portal.

El primer problema presentado por la moción de reconsideración es que la demandada no interpuso la de-

---

([1]) Bajo la sección 6 (a) " . . . tal causa de acción queda impedida para siempre a menos que se interponga dentro del término de dos años después de devengarse la causa de acción . . . "

fensa de prescripción ante el tribunal sentenciador o en su alegato original ante este Tribunal. Se suscita por primera vez en esta moción de reconsideración. La demandada afirma que tiene derecho a levantar la cuestión de prescripción en esta etapa del caso por el fundamento de que ésta es una defensa privilegiada que puede ser suscitada en cualquier momento antes de que sea firme la sentencia.

El argumento de la demandada al efecto de que puede levantar la defensa de prescripción en este momento puede sintetizarse como sigue: La sección 6 (a) de la Ley de Portal no elimina meramente el remedio para demandar después de transcurrido el período de dos años. Más bien extingue para siempre el derecho a recibir salarios devengados una vez vencido el término prescriptivo. En otras palabras, la Ley de Portal establece un límite sustantivo de tiempo más que un límite procesal. De conformidad, el no haber la demandada levantado la defensa de prescripción o no haber presentado prueba sobre la misma en el tribunal sentenciador, o no haber levantado la cuestión en su alegato original radicado ante este Tribunal, no constituye una renuncia de dicha defensa. Por el contrario, cuando como ocurre en este caso, un estatuto contiene un límite sustantivo de tiempo, la radicación de la acción dentro del término fijado es una condición precedente a poder recobrar. Toda vez que la demanda en este caso de su faz demuestra que parte de la reclamación está prescrita, la demandada podía levantar esta defensa por primera vez en su moción de reconsideración en este Tribunal. En apoyo de este argumento, la demandada cita *Rademaker* v. *E. D. Flynn Export Co.*, 17 F.2d 15 (C.A. 5, 1927); *Eberhart* v. *United States*, 204 Fed. 884, 890–1 (C.A. 8, 1913); *American R. Co. of Porto Rico* v. *Coronas*, 230 Fed. 545, 546 (C.A. 1, 1916); *Berry* v. *Heller*, 79 F.Supp. 476, 477–78 (Dist.Ct., Pa., 1948). Véanse además *Engel* v. *Davenport*, 271 U.S. 33; *Sgambati* v. *United States*, 172 F.2d 297 (C.A. 2, 1949). Ninguno de estos casos surgió bajo la Ley sobre Normas Razonables de Trabajo.

Antes de la aprobación de la Ley de Portal, no existía término federal de prescripción para reclamaciones de salarios que surgieran bajo la Ley sobre Normas Razonables de Trabajo. En su consecuencia, tanto los tribunales estatales como los federales aplicaron a dichos casos el correspondiente término prescriptivo estatal. *Chabrán* v. *Bull Insular Line,* 69 D.P.R. 269, 285–86; *Stilwell* v. *Hertz Drivurself Stations,* 174 F.2d 714 (C.A. 3, 1949), escolio 1, y casos citados. Como tales leyes estatales eran por lo general de naturaleza remedial, antes de la aprobación de la Ley de Portal la regla era que bajo dichas circunstancias la defensa de prescripción era renunciada a menos que se insistiera en ella en el tribunal sentenciador. *Stilwell* v. *Herzt Drivurself Stations,* supra. ¿Ha sido dicha regla cambiada por el estatuto federal de prescripción que ha sustituído las diversas leyes estatales para las reclamaciones que surjan bajo la Ley sobre Normas Razonables de Trabajo?

El demandante y el Secretario de Trabajo de los Estados Unidos arguyen que la regla establecida en el caso de *Stilwell* no ha sido cambiada por la Ley de Portal. Su tesis es que se tuvo por miras que el período prescriptivo en la Ley de Portal fuera meramente un sustituto de los diversos y prolongados períodos bajo las leyes estatales, que generalmente son estatutos remediales de prescripción. Arguyen que el estatuto federal puede interrumpirse, por ejemplo, por ingreso en las Fuerzas Armadas, véase la sección 205 de la Ley sobre Rehabilitación Civil de Soldados y Marinos de 1940, según fué enmendada, 50 U.S.C.A. App. sec. 525, o por encubrimiento. Por tanto, insisten en que, a menos que el demandado la levante durante el juicio, la defensa de prescripción contra una reclamación bajo la Ley Federal queda renunciada. Para casos y discusiones que arrojan alguna luz con respecto a este problema, véanse *Unexcelled Chemical Corp.* v. *United States,* 345 U.S. 59, y las consecuencias del caso de *Unexcelled Chemical* según éstas se describen en el número de septiembre de 1953, de *Labor Law Journal*

637–640; *Safrin* v. *Friedman et al.*, 17 Labor Cases 77,183 (N.Y. Supreme Court, 1950); *Unitel States* v. *Lovknit Mfg. Co.*, 189 F.2d 454, 457 (C.A. 5, 1951); *Carroll* v. *Pittsburgh Steel Co.*, 100 F.Supp. 749 (Dist.Ct., Pa., 1951); *Sauerzopf* v. *North American Cement Corporation*, 93 N.E.2d 617 (N.Y., 1920); *Baysinger* v. *Hanser*, 199 S.W.2d 644 (Mo., 1947); *Carpenter* v. *United States*, 56 F.2d 828 (C.A. 2, 1932); *Yablonsky* v. *City of New York*, 219 N.Y.Supp. 121 (1927); *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1186–8, 1198–1200, 1234–5, 1261, 1266–7; Atkinson, *Pleading the Statute of Limitations*, 36 Yale L.J. 914.

En este caso es innecesario decidir la cuestión levantada por las contenciones de las partes, que expusimos anteriormente, sobre cuándo puede levantarse la cuestión de prescripción bajo la Ley sobre Normas Razonables de Trabajo. Llegamos a esta conclusión porque convenimos con el demandante, con el Secretario de Trabajo del Estado Libre Asociado y con el Secretario de Trabajo de los Estados Unidos en que las reclamaciones aquí envueltas se basan en leyes locales y no en la Ley Federal. El demandante reclamó tiempo extra (1) por trabajar más de ocho horas diarias durante ciertos días, y (2) por trabajar durante ciertos días que para él eran días de descanso. Al hacer estas reclamaciones, descansó en la Ley núm. 379 de 1948 ((1) pág. 1255), en la Ley núm. 289 de 1946 ((1) pág. 683), y en el Decreto Mandatorio núm. 3. De igual forma, su reclamación por compensación doble como daños líquidos debido a que la demandada no le pagó de conformidad con dichas leyes locales, estaba basada en el artículo 13 de la Ley núm. 379.(²)

En nuestra opinión original llegamos a la conclusión de que este caso envolvía un contrato *Belo* frustrado. Pero

---

(²) Según dijimos en nuestra opinión original, "El patrono no alega que puede ser relevado en todo o en parte de estos daños bajo la Ley Federal. Limita su argumento en un corto párrafo a la contención de que no debemos aplicarle a él los daños líquidos prescritos en el artículo 13."

eso no altera el hecho de que las reclamaciones de que aquí se trata surgieron bajo leyes locales. En nuestra opinión original se declaró nulo el contrato por un salario semanal garantizado que de ordinario incluiría paga extra. El único problema que entonces quedaba era determinar el tipo ordinario de paga a los fines de calcular la paga extra. La fórmula que adoptamos para ello provino de las disposiciones de la Ley núm. 379 de 1948. Además, ninguna de las reclamaciones por paga extra estaba predicada en las disposiciones federales (1) por paga de tiempo y medio después de cuarenta horas semanales y (2) por daños líquidos. Por el contrario, como hemos visto, la paga extra se basaba exclusivamente (a) en trabajo diario después de ocho horas y (b) en trabajo realizado durante días de descanso. Estas reclamaciones—así como la reclamación por daños líquidos— emanaron exclusivamente de ley local.

Dijimos en *Chabrán* v. *Bull Insular Line*, supra, pág. 294, que la sección 18 de la Ley Federal "concedió a los estados libertad de acción para establecer normas mayores que las comprendidas en la Ley Federal. La Ley sobre Normas Razonables de Trabajo suplanta la legislación local solamente en caso de que ésta provea normas menores que la Ley Federal." Las reclamaciones en este caso surgieron bajo leyes locales que son válidas porque establecen normas de salario mínimo y de horas máximas que no se encuentran en la Ley sobre Normas Razonables de Trabajo. En verdad, según lo entendemos nosotros, la demandada no cuestiona en los méritos de este caso ni la validez de estas leyes locales ni su aplicabilidad al trabajo realizado por el demandante.

Nada encontramos en la sección 6 de de la Ley de Portal o en su historial legislativo que indique que el Congreso tuvo por miras que dicha ley se aplicase como un estatuto prescriptivo a las reclamaciones que surjan bajo leyes estatales válidas. En la sección 6 el Congreso consideraba exclusivamente el problema de eliminar las diversas leyes estatales de prescripción que anteriormente se habían usado para hacer

valer reclamaciones *que surgían bajo la Ley Federal*. Estas leyes estatales fueron sustituídas por la sección 6, que de su faz se aplica solamente a las reclamaciones bajo la Ley sobre Normas Razonables de Trabajo. Por consiguiente somos del criterio que el Congreso, que expresamente permitió a los Estados en la sección 18 de la Ley Federal que proveyeran por legislación local salarios mínimos más altos y horas máximas de trabajo más bajas para los empleados cubiertos por la Ley Federal, no tuvo la intención de ocupar el campo, con exclusión de las leyes estatales de prescripción, para reclamaciones de tales empleados *que surjan a virtud de tales leyes estatales válidas*. *Cf. Avila* v. *Tribl. de Distrito*, 68 D.P.R. 11, 17–19, y casos citados; *Junta Relaciones de Trabajo* v. *N.Y. & P.R. S/S Co.*, 69 D.P.R. 782; *Asoc. Empl. Bayamón Transit* v. *Junta Rel. Trabajo*, 70 D.P.R. 292; *Junta Rel. del Trabajo* v. *I.L.A.*, 73 D.P.R. 616; *Engel* v. *Davenport*, supra.

■ La reclamación aquí envuelta es por derechos válidamente creados por la Asamblea Legislativa de Puerto Rico. En su consecuencia, la cuestión de prescripción se rige por ley local. *Cf. Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 703, escolio 10, 707, escolio 17, 709, escolio 20, 711, escolio 22, 712–3, escolio 24; *Note, Supreme Court Review of State Interpretations of Federal Law Incorporated by Reference*, 66 Harv.L.Rev. 1498. Y la demandada no alega ni que la reclamación del demandante haya prescrito bajo las leyes de Puerto Rico ni que ella puede, bajo la ley local, levantar la cuestión de prescripción en fecha tan tardía.(3) Por tanto rechazamos la contención de la deman-

---

(3) Véanse *Avellanet* v. *Porto Rican Express Co.*, supra; *Jiménez* v. *Corte*, 65 D.P.R. 37; *Valiente & Cía.* v. *Corte*, 68 D.P.R. 529; *Chabrán* v. *Bull Insular Line*, supra; *Vicenty* v. *Corona Brewing Corporation*, 73 D.P.R. 135. Véanse además, *Ramos* v. *Pueblo*, 67 D.P.R. 640; *Rivera* v. *De Choudens*, 63 D.P.R. 995; *Stilwell* v. *Hertz Drivurself Stations*, supra; *Colón* v. *Shell Co. (P. R.) Ltd.*, 55 D.P.R. 592; *Desmornes* v. *Herederos Desconocidos de A. Desmornes*, 13 D.P.R. 18, confirmado en *Burnet* v. *Desmornes*, 226 U.S. 145; *Catoni* v. *Martorell vda. de Prado*, 38 D.P.R. 328; *Fornaris* v. *Font*, 44 D.P.R. 602; *Upton* v. *McLaughlin*, 105 U.S. 640.

dada al efecto de que parte de las reclamaciones aquí envueltas está prescrita.

*La moción de reconsideración será declarada sin lugar.*

El Juez Asociado Sr. Belaval concurre en el resultado.

El Juez Asociado Sr. Sifre no intervino.

---

EN SEGUNDA MOCIÓN DE RECONSIDERACIÓN

15 de marzo de 1954.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

El 7 de noviembre de 1951 el demandante, por su propio derecho, instó demanda ante el anterior tribunal de distrito contra la demandada en reclamación de salarios dejados de percibir durante el período comprendido entre el 19 de mayo de 1948 y el 12 de julio de 1950. Luego de un juicio en los méritos, en el cual el demandante no estuvo representado por abogado, el anterior tribunal de distrito dictó sentencia a favor del demandante contra la cual ambas partes instaron recurso de apelación.

Originalmente, la demandada aducía solamente dos contenciones en apelación: (1) los hechos de este caso envolvían un contrato válido del tipo *Belo;* (2) aun cuando no existiera aquí un contrato válido del tipo *Belo,* deberíamos relevar a la demandada de los daños líquidos fijados en el artículo 13 de la Ley núm. 379, Leyes de Puerto Rico, 1948 ((1) pág. 1255). En nuestra opinión del 7 de agosto de 1953 rechazamos estas contenciones y en cuanto a ese extremo confirmamos la sentencia del tribunal sentenciador.[1]

---

[1] La demandada nunca ha alegado que la cuestión de daños líquidos en este caso se rige por la Ley Federal y no por la local. En nuestra opinión del 7 de agosto de 1953 dijimos lo siguiente: "El patrono no alega que puede ser relevado en todo o en parte de estos daños bajo la Ley Federal. Limita su argumento en un corto párrafo a la contención de que no debemos aplicarle a él los daños líquidos prescritos en el artículo 13. Una buena contestación a este argumento es que la disposición con respecto a daños líquidos es mandatoria. Véase *Tulier v. Autoridad de Tierras,* 70 D.P.R. 267."

Por otro lado, en nuestra opinión del 7 de agosto de 1953 convinimos con la contención del demandante en su apelación. El problema consistía en determinar el tipo sencillo de paga a fin de calcular la paga extra. Esto se hizo necesario una vez decidimos, al considerar la apelación de la demandada, que bajo los hechos de este caso el contrato del tipo *Belo* otorgado por las partes para un salario semanal garantizado era nulo en tanto en cuanto tenía por miras incluir paga extra. El tribunal sentenciador convino con la demandada en que el tipo sencillo de paga por hora se determina en este caso dividiendo el salario de cada semana por 48 horas. No estuvimos de acuerdo. Adoptamos la contención del demandante y resolvimos que el divisor debería ser 40, no 48 horas, a virtud de ciertas disposiciones de la Ley núm. 379 y del Decreto Mandatorio núm. 3.([2]) A tenor con este criterio, modificamos la sentencia a este respecto. Así modificada, la sentencia del tribunal sentenciador fué confirmada.

La demandada entonces radicó una moción de reconsideración en la cual *por primera vez* sostuvo que, en vista del hecho de que la demanda fué radicada el 7 de noviembre de 1951, el término prescriptivo de dos años establecido en la sección 6 de la Ley de Portal a Portal, 61 Stat. 84, 87, 29 U.S.C. (Supp. V) sec. 255, impedía aquella parte de la reclamación por salarios devengados entre el 19 de mayo de 1948 y el 7 de noviembre de 1949. En nuestra opinión del 10 de diciembre de 1953 declaramos sin lugar esta moción de re-

---

([2]) La Regla Federal es que en el caso de un contrato *Belo* frustrado el tipo sencillo de paga se determina, a los fines de calcular paga extra, dividiendo el salario por cada semana por el número total de horas de hecho trabajadas durante esa semana específica. Véase Parte II de nuestra opinión del 7 de agosto de 1953 y los casos en ella citados. Pero la demandada nunca ha alegado que la regla federal es de aplicación aquí. Conviene en que la Ley núm. 379 de 1948 válidamente establece una fórmula más beneficiosa al empleado. Véase *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 294. Como dijimos en nuestra opinión del 7 de agosto de 1953, la única disputa era "si bajo las circunstancias de este caso la Ley núm. 379 y el Decreto Mandatorio núm. 3 requieren que el divisor sea 48 horas (según se resolvió por el tribunal sentenciador y sostenido por la demandada) ó 40 horas (según sostiene el querellante)."

consideración. Resolvimos que era innecesario decidir si la defensa de prescripción podía levantarse bajo la Ley de Portal por primera vez en una moción de reconsideración ante este Tribunal. Llégamos a esta conclusión mediante el siguiente razonamiento: Las reclamaciones aquí envueltas se basaban únicamente en trabajo diario después de ocho horas y en trabajo realizado durante días de descanso a tenor con la Ley núm. 379 de 1948, Ley núm. 289 de 1946, y con el Decreto Mandatorio núm. 3. Ninguna de las reclamaciones fué basada en la disposición federal de tiempo y medio después de cuarenta horas semanales. En consecuencia dichas reclamaciones emanaban exclusivamente de estatutos locales. Estos últimos—que disponían paga extra (a) por trabajo diario en exceso de ocho horas y (b) por trabajo en días de descanso—son válidos bajo la sección 18 de la Ley sobre Normas Razonables de Trabajo que le permite a los estatutos locales establecer normas para salario mínimo y para horas máximas superiores a las que contiene la Ley Federal. El Congreso no tuvo por miras que la sección 6 de la Ley de Portal se aplicase como término prescriptivo a reclamaciones que surgieran exclusivamente bajo estatutos locales válidos; dispuso en dicha sección 6 un término prescriptivo de dos años para reclamaciones que surgiesen exclusivamente bajo la Ley Federal. Toda vez que las reclamaciones en este caso son de derechos válidamente creados por ley local únicamente, la cuestión de prescripción se rige por ley local. Y bajo las leyes de Puerto Rico las reclamaciones en este caso no han prescrito ni puede la demandada levantar la cuestión de prescripción en fecha tan tardía, véanse los casos citados en el escolio 3 de nuestra opinión del 10 de diciembre de 1953.

Por los motivos consignados en nuestra opinión del 10 de diciembre de 1953 y en los casos en ella citados, nos reafirmamos en nuestro criterio de que las reclamaciones de salarios que estén basadas exclusivamente en estatutos locales se rigen por nuestra regla local con respecto a pres-

cripción aun en aquellos casos en que el empleado esté sujeto a la Ley sobre Normas Razonables de Trabajo. Pero la demandada ha radicado una segunda moción de reconsideración, fechada el 14 de diciembre de 1953, pendiente ahora ante nosotros, en la cual sostiene que nos equivocamos al manifestar en nuestra opinión del 10 de diciembre de 1953 que todas las reclamaciones en este caso eran por paga extra por trabajo diario realizado después de ocho horas y por trabajo en días de descanso, de conformidad únicamente con la ley local. Convenimos en que cometimos este error. Es decir, en algunas ocasiones el demandante no trabajó más de ocho horas en un solo día o en su día de descanso pero sí trabajó más de cuarenta horas a la semana. Bajo estas circunstancias su reclamación era por tiempo y medio después de cuarenta horas a la semana más bien que por paga extra por trabajo en exceso de ocho horas diarias o por trabajo en su día de descanso.

El demandante, el Secretario de Trabajo del Estado Libre Asociado de Puerto Rico y el Secretario de Trabajo de los Estados Unidos no obstante alegan que aun con respecto a las reclamaciones por tiempo y medio después de cuarenta horas a la semana, rige la regla local en cuanto a prescripción. A virtud del *Disponiéndose* del artículo 5 de la Ley núm. 379 y del párrafo B(2)(*b*) del Decreto Mandatorio núm. 3, el demandante en este caso tiene derecho a recibir paga a razón de tiempo y medio después de cuarenta horas a la semana; también tiene derecho a exactamente la misma paga extra bajo la Ley Federal, véase escolio 10 de nuestra opinión del 7 de agosto de 1953. Toda vez que la reclamación por salario a tiempo y medio después de cuarenta horas a la semana podía sostenerse recurriendo bien a la ley federal o a la local, el demandante y los *amici curiae* arguyen que el demandante tiene derecho a los beneficios del término prescriptivo local más largo a virtud de la sección 18 de la Ley Federal. *Cf. Chabrán* v. *Bull Insular Line*, supra, pág. 294.

El Secretario de Trabajo de los Estados Unidos, en su alegato como *amicus curiae,* expone su posición sobre este punto en la siguiente forma:

"La reclamación en este caso no se insta bajo la Ley Federal sino bajo una ley local para la cual otra ley local ha fijado un término prescriptivo más largo: Como ya se ha dicho, la sección 18 de la Ley sobre Normas Razonables de Trabajo establece claramente que la Ley Federal no suplanta los requisitos más estrictos de ningún estatuto estatal. . . . Si bien la sección 18 no menciona específicamente el término prescriptivo nos parece que la inferencia razonable es que ninguna de las normas superiores o de las disposiciones más estrictas de una ley estatal aplicable queda afectada por la Ley Federal.

"En su 'exposición de motivos' que sirve de introducción a la Ley de Portal a Portal, el Congreso se refirió a los diversos términos prescriptivos aplicables a reclamaciones bajo la Ley Federal en ausencia de un período prescriptivo federal uniforme. Sin embargo, no creemos que de esto surge que el período prescriptivo federal tuvo por miras regir reclamaciones instadas bajo una ley estatal. En otras palabras, los estatutos de los distintos estados son todavía de aplicación a reclamaciones de salario bajo las leyes estatales.

"El hecho de que Puerto Rico mediante la Ley núm. 379 del 15 de mayo de 1948 adoptara varias de las disposiciones sustantivas de la Ley Federal no hace que la reclamación en este caso deje de ser una de las reclamaciones autorizadas por la ley de Puerto Rico. Además, parece no haber razón para que al comercio interestatal le sea aplicable un término prescriptivo más corto que el aplicable al comercio local en tanto en cuanto concierne a la ley local. Si bien la ley local incorporó normas sustantivas de la Ley Federal, aquélla no incorpora la Ley de Portal a Portal. . . . Este pleito fué presentado bajo la ley estatal y, por consiguiente, aun cuando los requisitos estatales coinciden en aspectos sustanciales con el estatuto federal, es nuestra opinión que el término prescriptivo estatal sería aplicable al remedio provisto en la ley estatal."

Desde luego existe un argumento bastante bueno en sentido contrario: El Congreso estaba tan preocupado por la carga que se imponía al comercio interestatal a causa de las diversas leyes prescriptivas estatales que dispuso en la sec-

ción 6 de la Ley de Portal un término prescriptivo uniforme de dos años para las reclamaciones de salarios instadas bajo la Ley sobre Normas Razonables de Trabajo. Por lo tanto, no pudo haber sido la intención del Congreso permitirle a los estados individualmente reinstalar para las reclamaciones cubiertas por la Ley Federal la enojosa situación de leyes prescriptivas estatales diferentes que había eliminado por la sección 6 de la Ley de Portal mediante la aprobación de leyes locales que comprendan exactamente las mismas normas de salarios mínimos y de horas máximas de trabajo que aparecen en la Ley Federal a fin de aplicarles a las mismas los períodos prescriptivos más largos provistos en la ley local.

Sin embargo, en vista del resultado a que más adelante llegamos en este caso, preferimos dejar pendiente la cuestión de si el término prescriptivo de Puerto Rico, más bien que la sección 6 de la Ley de Portal, es aplicable a reclamaciones de salarios para las cuales la ley local así como la federal proveen exactamente la misma compensación. Por igual motivo, no pasamos sobre la siguiente cuestión: El *contrato* escrito entre las partes—que presumiblemente era válido con excepción del ineficaz intento de hacer que la garantía semanal incluyese paga extra—disponía el pago de tiempo y medio después de cuarenta horas a la semana. *Quaere*, si el término prescriptivo local o el federal se aplica a una reclamación basada en un *contrato* más bien que en ley local o federal cuando, como aquí, los términos del contrato coinciden tanto con la ley federal como con la ley local.(³)

Pasamos a la cuestión que dejamos pendiente en

----

(³) El alegato original radicado ante este Tribunal por la demandada —sosteniendo que se le debería relevar del pago de los daños líquidos provistos en la sección 13 de la Ley núm. 379 de 1948—contiene la siguiente afirmación: "Se trata aquí de una reclamación basada en la interpretación de un contrato de servicios. De ser válido dicho contrato, no se le adeuda nada substancial al reclamante. Dicho contrato fué suscrito libremente por el reclamante. Consideramos que bajo tales circuns-

nuestra opinión del 10 de diciembre de 1953 y que ahora creemos que debemos resolver en este caso; es decir, si en un pleito por salarios dejados de percibir devengados bajo la Ley sobre Normas Razonables de Trabajo la cuestión de prescripción a tenor con la sección 6 de la Ley de Portal puede ser suscitada por la demandada por primera vez en apelación. (⁴)

Con anterioridad a la aprobación de la Ley de Portal, no existía término prescriptivo federal alguno para reclamaciones de salarios que surgieran bajo la Ley sobre Normas Razonables de Trabajo. Por consiguiente, tanto los tribunales estatales como los federales aplicaban a dichas reclamaciones el correspondiente término prescriptivo estatal. *Chabrán* v. *Bull Insular Line*, supra, 285–6; *Stilwell* v. *Hertz Drivurself Stations*, 174 F.2d 714 (C.A. 3, 1948), escolio 1, y casos citados; *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1266–7; Anotaciones, 21 A.L.R.2d 1327, 1357; 3 A.L.R.2d 1097, 1169; 162 A.L.R. 237; 157 A.L.R. 545. Como tales leyes estatales generalmente eran de naturaleza remedial, la regla antes de que se aprobara la Ley de Portal era que bajo dichas circunstancias se renunciaba la defensa de prescripción a menos que se insistiera en ella en el tribunal sentenciador. *Stilwell* v. *Hertz Drivurself Stations*, supra; véase *Hughes* v. *Werner's Estate*, 78 F.Supp. 762 (Dist. Ct., Ill., 1948).

La demandada sostiene, sin embargo, que la anterior regla en cuanto a renuncia de la prescripción ha sido cambiada por la Ley de Portal, que sustituyó los diversos estatutos estatales de prescripción para reclamaciones que surgieran a virtud de la Ley sobre Normas Razonables de

---

tancias, la reclamación de salarios procedería como resultado de una interpretación judicial de una operación contractual y no como resultado directo de haber dejado voluntariamente de pagar los salarios que marca la ley."

(⁴) Desde luego la demandada intenta levantar esta cuestión solamente en cuanto a aquella parte de la reclamación de salarios que, de ser aplicable la Ley de Portal, se devengó más de dos años antes de la radicación de la demanda el 7 de noviembre de 1951.

Trabajo. El Congreso dispuso en la sección 6 (a) de la Ley de Portal que los pleitos bajo la Ley Federal " ... queda[n] impedido[s] *para siempre* a menos que se interponga[n] den-, tro del término de dos años después de surgir la causa de acción ... " (Bastardillas y corchetes nuestros.) La demandada alega que la sección 6 (a) no impide meramente, como en el caso de las leyes estatales pertinentes, el remedio para poder demandar después de dos años. Más bien, según la demandada, la sección 6 (a) extingue "para siempre" el derecho a salarios no pagados una vez transcurrido el término prescriptivo. Dicho en otras palabras, la demandada afirma que la sección 6 (a) establece un límite sustantivo de tiempo más que un límite procesal. De esto surge, según la demandada, que el no haber ella alegado u ofrecido testimonio sobre la cuestión de la prescripción ante el tribunal sentenciador, o el no levantarla ante este Tribunal en su alegato original, no constituye una renuncia de dicha defensa. Por el contrario, la posición de la demandada es que en aquellos casos en que, como ocurre en éste, un estatuto contiene un límite sustantivo de tiempo, la radicación del pleito dentro del término fijado es una condición precedente a poder recobrar; la demanda en este caso de su faz demuestra que parte de la reclamación está prescrita; por consiguiente, la demandada podía levantar esta defensa por primera vez en su moción de reconsideración ante este Tribunal.(5)

No podemos convenir con esta contención de la demandada. Nada encontramos en el lenguaje o en el historial legislativo de la Ley de Portal que indique que el Congreso

(5) En apoyo de este argumento, la demandada cita *Rademaker v. E. D. Flynn Export Co.*, 17 F.2d 15 (C.A. 5, 1927); *Eberhart v. United States*, 204 Fed. 884, 890–1 (C.A. 8, 1913); *American R. Co. of Porto Rico v. Coronas*, 230 Fed. 545, 546 (C.A. 1, 1916); *Berry v. Heller*, 79 F.Supp. 476, 477–78 (Dist.Ct., Pa., 1948). Véase además *Engel v. Davenport*, 271 U.S. 33; *Sgambati v. United States*, 172 F.2d 297 (C.A. 2, 1949). Ninguno de estos casos surgió bajo la Ley sobre Normas Razonables de Trabajo.

tuvo la intención de cambiar la regla corriente de que los; estatutos sobre prescripción generalmente son adjetivos más bien que sustantivos. *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1186-7. Por el contrario, el Congreso explícitamente dijo en la sección 1 de la Ley de Portal que el período prescriptivo en dicha ley fijado tiene por miras servir como sustituto para "los diversos y prolongados períodos" que se encuentran en las leyes de los distintos estados; y éstos generalmente son estatutos adjetivos de prescripción. Véase *Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304. Debe admitirse que el uso de las palabras "para siempre" crea alguna dificultad; pero queda el hecho de que el Congreso también optó por usar "impedido", la palabra tradicional que se usa cuando se tiene por miras impedir un remedio y no extinguir la responsabilidad por el mismo. Además, nuestro criterio está sostenido por el hecho de que aquí el término prescriptivo se halla en un estatuto separado y no se incorpora en el estatuto que crea el derecho, como suele suceder cuando el término prescriptivo es sustantivo más bien que procesal. *Developments in the Law— Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1188, 1261; *Sgambati* v. *United States*, 172 F.2d 297 (C.A. 2, 1949).

Convenir con la demandada en que la defensa de prescripción puede levantarse por primera vez ante este Tribunal equivaldría en efecto a privar al demandante de su oportunidad de demostrar, si pudiera, que el término prescriptivo ha sido interrumpido por hechos tales como ingreso en las Fuerzas Armadas, véase la sección 205 de la Ley Sobre Rehabilitación Civil de Soldados y Marinos de 1940 según ha sido enmendada, 50 USCA App. sec. 525, fraude o encubrimiento. No podemos resolver que el Congreso tuvo por miras tal resultado. *Safrin* v. *Friedman*, 17 Labor Cases 77,183 (N.Y. Supreme Court, 1950) y *United States* v. *Lovknit Mfg. Co.*, 189 F.2d 454, 457 (C.A. 5, 1951) sostienen nuestro criterio. Véanse Atkinson, *Pleading the Statute of Limitations*, 36 Yale L. J. 914, 926-7, 937, 945-8; *Burnet* v. *Des-*

*mornes*, 226 U.S. 145. *Cf. Carroll* v. *Pittsburgh Steel Co.*, 100 F.Supp. 749 (Dist. Ct., Pa., 1951) ; *Sauerzopf* v. *North American Cement Corporation*, 93 N.E.2d 617 (N.Y., 1950). Para una conclusión distinta interpretando otros estatutos, véanse *Baysinger* v. *Hanser*, 199 S.W.2d 644, 646 (Mo., 1947) ; *Yablonsky* v. *City of New York*, 219 N.Y. Supp. 121 (1927) ; *Carpenter* v. *United States*, 56 F.2d 828 (C.A. 2, 1932) ; *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1199, 1234–5 ; casos citados en el escolio 5. Por consiguiente somos de opinión que a virtud de la sección 6 de la Ley de Portal se renuncia la defensa de prescripción de una reclamación sobre salarios bajo la Ley sobre Normas Razonables de Trabajo, a no ser que el demandado la levante durante el juicio.

El Contralor General de los Estados Unidos ha expresado su conformidad con la conclusión a que hemos llegado. En *Unexcelled Chemical Corp.* v. *United States*, 345 U.S. 59, la Corte resolvió que un pleito instado por los Estados Unidos bajo la Ley Walsh-Healey para recobrar daños líquidos de un contratista que llevaba a cabo una obra para el Gobierno, que a sabiendas empleó menores en el trabajo, estaba prescrita a tenor con el término prescriptivo de dos años contenido en la sección 6 de la Ley de Portal. Las consecuencias del caso de *Unexcelled Chemical* se describen en 4 Labor Law Journal 637–40. Después de emitida la opinión de la Corte Suprema, se vió que el gobierno ya tenía el dinero por el cual había radicado el pleito: había retenido la suma en controversia del importe del contrato. El Contralor General convino con el Secretario de Trabajo en que, no empece la decisión en el caso de *Unexcelled Chemical,* el Gobierno tenía derecho a quedarse con el dinero que había sido retenido con anterioridad al pleito del gobierno para recobrarlo. Una carta del 6 de agosto de 1953 del Contralor General a la compañía asume esa posición. La carta aparece citada en 4 Labor Law Journal a las páginas 639–40 y dice en parte como sigue:

"A la par que usted sugiere que la Corte Suprema de los Estados Unidos ha resuelto los derechos legales envueltos por su decisión del 9 de marzo de 1953 . . . . según consta en mi carta del 2 de julio de 1953, surge el hecho de que la Corte sólo resolvió que el Gobierno no puede hacer responsable a nadie por tales daños a través de un pleito iniciado más de dos años después de la fecha en que ocurrieron las infracciones. Aparentemente, el hecho de qué el cobro ya se había efectuado no fué puesto en conocimiento de los tribunales y éstos no lo consideraron, aun cuando dicho cobro se había efectuado antes de la actuación original de la Corte de Distrito el 22 de junio de 1951. . . .

"El Departamento de Trabajo, rindiendo un informe a esta Oficina a solicitud suya, ha asumido la posición de que 'la disposición sobre prescripción de la Ley de Portal solamente impide recurrir a los tribunales después de dos años contados a partir de la fecha en que surja la causa de acción' y que 'el remedio de retención permanece intacto.' El criterio del Departamento se amplía por el Procurador Interino en la siguiente forma:

" 'El lenguaje del propio estatuto ofrece el más convincente argumento para esta última posición. Así, la sección 6 de la Ley de Portal comienza: "Toda causa de acción iniciada . . . para hacer valer cualquier causa de acción para . . . ;" mientras que la sección 7 dice en parte: "Al determinarse cuándo se inicia una causa de acción a los fines de la sección 6, una causa de acción . . . se considerará iniciada el día en que se radica la demanda; . . ." Claramente, estos son términos con significado definido, adecuados solamente para impedir pleitos ante los tribunales. Como dijo la Corte Suprema en el caso de *Unexcelled Chemical*, "el Congreso . . . se refería a los pleitos en el sentido convencional." . . .

" 'Hay motivo para creer que el Congreso no tuvo por miras extinguir tanto la responsabilidad como el remedio. Cuando, en situaciones similares, así lo quiere hacer, el Congreso emplea lenguaje específico a dichos fines. . . . Hubiera sido muy sencillo para el Congreso haber incluído tal disposición en la sección 6 de la Ley de Portal, y el hecho de que no lo haga, sino que por el contrario empleara términos con significados definidos ya conocidos de ordinario asociados con estatutos prescriptivos adjetivos corrientes, es considerado altamente significativo. . . .

340

" '. . . . . . . .

"Convengo en que el efecto de la reciente decisión de la Corte Suprema no puede considerarse como concluyente con respecto a la responsabilidad de la Unexcelled Chemical Corporation en el asunto, y, de conformidad, debo negarme a revisar la gestión de cobro iniciada."

En vista de nuestra conclusión que la defensa de prescripción bajo la sección 6 de la Ley de Portal no puede levantarse por primera vez en apelación, la segunda moción de reconsideración, radicada por la demandada el 14 de diciembre de 1953, *debe ser declarada sin lugar.* ([6])

El Juez Asociado Sr. Belaval está conforme con el resultado.

El Juez Asociado Sr. Sifre no intervino.

---

([6]) El demandante, quien llevó personalmente su caso ante el anterior tribunal de distrito y ha actuado intermitentemente a nombre propio ante este Tribunal, erróneamente ha creído que su abogado no le protegió debidamente sus intereses en relación con la segunda moción de reconsideración. Por consiguiente creemos conveniente decir que el abogado del demandante lo ha representado hábil y diligentemente en todo momento durante el curso de los procedimientos ante nos.